# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAISHA SANDERS (01),<br>[DOB: ▮▮▮▮1991]<br><br>JOEL WRIGHT (02),<br>[DOB: ▮▮▮▮1989]<br><br>DENISE SANDERS (03),<br>[DOB: ▮▮▮▮1964]<br><br>RASHONDA GOLDEN (04),<br>[DOB: ▮▮▮▮1989]<br><br>ROXANNE NAZIR (05),<br>[DOB: ▮▮▮▮1985]<br><br>KIANDRA CROWE (06),<br>[DOB: ▮▮▮▮1990]<br><br>JEFFERY CHILLIS II (07),<br>[DOB: ▮▮▮▮1993]<br><br>SHAQUILLE FIELDER (08),<br>[DOB: ▮▮▮▮1992]<br><br>ALFRED HAYES IV (09),<br>[DOB: ▮▮▮▮1994]<br><br>LUANA McNURLIN (10),<br>[DOB: ▮▮▮▮1987]<br><br>JORDAN NICHOLS (11),<br>[DOB: ▮▮▮▮1993]<br><br>Defendants. | Case No. 24-00029-01/11-CR-W-BP<br><br>COUNT ONE:<br>18 U.S.C. § 1349<br>*(Conspiracy to Commit Wire Fraud)*<br>NMT 20 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>COUNTS TWO - TWELVE:<br>18 U.S.C. § 1343<br>*(Wire Fraud)*<br>NMT 20 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>COUNT THIRTEEN:<br>18 U.S.C. § 1957<br>*(Money Laundering)*<br>NMT 10 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>ALLEGATION OF CRIMINAL FORFEITURE<br>18 U.S.C. § 981(a)(1)(C)<br>28 U.S.C. § 2461<br><br>$100 Mandatory Special Assessment Each Count |

| DEFENDANT NO. | DEFENDANT NAME | COUNTS CHARGED |
|---|---|---|
| 1 | DAISHA SANDERS | 1 - 13 and Forfeiture Allegation |
| 2 | JOEL WRIGHT | 1 & 3 |
| 3 | DENISE SANDERS | 1 & 4 |
| 4 | RASHONDA GOLDEN | 1 & 5 |
| 5 | ROXANNE NAZIR | 1 & 6 |
| 6 | KIANDRA CROWE | 1 & 7 |
| 7 | JEFFERY CHILLIS II | 1 & 8 |
| 8 | SHAQUILLE FIELDER | 1 & 9 |
| 9 | ALFRED HAYES IV | 1 & 10 |
| 10 | LUANA McNURLIN | 1 & 11 |
| 11 | JORDAN NICHOLS | 1 & 12 |

INDICTMENT

**THE GRAND JURY CHARGES THAT:**

COUNT ONE

At all times material to this Indictment:

**Introduction**

1.      Beginning no later than on or about February 2021, and continuing until at least July 2022, in Jackson County, within the Western District of Missouri and elsewhere, DAISHA SANDERS, JOEL WRIGHT, DENISE SANDERS, RASHONDA GOLDEN, ROXANNE NAZIR, KIANDRA CROWE, JEFFERY CHILLIS II, SHAQUILLE FIELDER, ALFRED HAYES IV, LUANA McNURLIN, and JORDAN NICHOLS, defendants herein, conspired, confederated and agreed with each other and persons known and unknown to the grand jury, to electronically submit false and fraudulent applications for Paycheck Protection Program (PPP) loans affecting interstate commerce. The scheme caused over $220,000

2

in fraudulent PPP loans to be issued to ineligible borrowers, some of which were forgiven even though the funds were not used for the purposes specified in the PPP.

2.      Defendant DAISHA SANDERS, a resident of Blue Springs, Missouri, prepared and filed fraudulent PPP loan applications on behalf of other persons. Generally, she charged fees of up to $5,000 for her assistance in filing false and fraudulent PPP loans. DAISHA SANDERS would create or work with a person known to the Grand Jury to create counterfeit bank records and IRS Forms Schedule C for nonexistent businesses or with inflated income for existing businesses to qualify the borrower for a PPP loan. DAISHA SANDERS submitted and caused to be submitted false and fraudulent PPP loan applications and counterfeit IRS Forms Schedule C to the Small Business Administration (SBA) and lenders outside the State of Missouri.

## I.      THE PAYCHECK PROTECTION PROGRAM

3.      On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security Act ("The Cares Act"), an economic stimulus bill that, among other things, provided emergency assistance to small business owners, including agricultural businesses, and nonprofit organizations in all U.S. states, Washington D.C., and territories affected by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). Additional PPP funding was authorized in legislation enacted on or about December 27, 2020, and March 11, 2021.

4.      As discussed more fully below, the PPP program, which is operated by the Small Business Administration ("SBA") provided small businesses with funding to meet specific business obligations, including payroll and rent. The PPP permitted participating third-party

lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans are fully guaranteed by the SBA. In the event of default, SBA will fully satisfy the lender for any balance remaining on the loan. Further, SBA will forgive any loan up to 100 percent if the borrower establishes it utilized 60 percent of the loan on payroll costs in the 24-week period post-disbursement, with the remaining 40 percent going toward covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures. Whatever portion is not forgiven is serviced as a loan.

5. The SBA promulgated regulations concerning eligibility for a PPP loan. Individuals who operated a business under a "sole proprietorship" business structure were eligible for a PPP loan. To qualify for a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the Internal Revenue Service on a "Form 1040, Schedule C," for a given tax year. As with other PPP loans, this information and supporting documentation was used to calculate the amount of money the individual was entitled to receive under the PPP. The maximum loan amount for a sole proprietor with no employees was $20,833.

6. A PPP loan application was processed by the third-party participating lender with whom the application was filed. If a PPP loan application was approved, the participating lender would fund the PPP loan; in order to encourage PPP loans to be issued, the loan was guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

7. The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

8. The following lenders funded the PPP loans:

Itria Ventures LLC was a national, non-bank, direct commercial lender based in New York that funded PPP loans;

Harvest Small Business headquartered in California;

Prestamos CDFI, LLC (Prestamos) was a Community Development Financial Institution (CDFI) headquartered in Arizona; and

Capital Plus Financial, LLC was a CDFI headquartered in Bedford, Texas.

## COUNT ONE

### The Scheme

9. The allegations set forth in paragraphs 1 through 8 are hereby incorporated in full.

10. Beginning on or about February 2021, and continuing through on or about July 2022, in Jackson County, within the Western District of Missouri and elsewhere, the defendants DAISHA SANDERS, JOEL WRIGHT, DENISE SANDERS, RASHONDA GOLDEN, ROXANNE NAZIR, KIANDRA CROWE, JEFFERY CHILLIS II, SHAQUILLE FIELDER, ALFRED HAYES IV, LUANA McNURLIN, and JORDAN NICHOLS did knowingly combine, conspire, confederate, and agree with each other and with persons known and unknown to the Grand Jury, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses,

representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses were and would be false and fraudulent when made and caused to made and that said omissions were and would be material, and in furtherance thereof transmitted and caused to be transmitted interstate wire communications, contrary to Title 18, United States Code, Section 1343.

**Manner and Means:**

11. DAISHA SANDERS created PPP loan applications for each of the co-conspirators in exchange for a payment from the loan proceeds. The applications falsely stated either the existence of a sole proprietorship prior to the pandemic or greatly inflated the revenues of any "businesses" that did exist in 2019.

12. DAISHA SANDERS worked with a person known to the Grand Jury to create fictitious bank records and IRS Forms Schedule C and other false financial documents to support the fraudulent PPP loan applications that would be submitted to various third-party lenders designated by the SBA to participate in the PPP. These IRS Forms Schedule C falsely stated that the person in whose name the loan was submitted had operated a sole proprietorship in 2019 or 2020. The IRS Forms Schedule C included false statements of income and expenses attributed to the business in whose name the PPP loan application was submitted. The PPP loan applications also certified that the information provided in the application and in supporting documents was true and accurate in all respects.

13. DAISHA SANDERS submitted the PPP loan applications on behalf of each of the co-conspirators. DAISHA SANDERS submitted the applications from a computer using internet service located in Blue Springs, Missouri.

14. Once the PPP loans were funded, the co-conspirators would pay DAISHA SANDERS up to $5,000 for making and submitting the false loan applications.

15. On or about the dates listed below, DAISHA SANDERS electronically created loan accounts, submitted false PPP loan applications, or checked the status of the loans to the SBA's servers in Oregon or to the lenders in the states listed below:

|     | DATE       | BORROWER          | FINANCE COMPANY & LOCATION          | Amount of PPP Loan |
| --- | ---------- | ----------------- | ----------------------------------- | ------------------ |
| a.  | 02/06/2021 | Daisha Sanders    | Itria Ventures, LLC – New York      | $20,832.50         |
| b.  | 02/07/2021 | Joel Wright       | Itria Ventures, LLC – New York      | $20,832            |
| c.  | 05/27/2021 | Denise Sanders    | Harvest Small Business – California | $20,833            |
| d.  | 02/18/2021 | Rashonda Golden   | Itria Ventures, LLC – New York      | $20,833.33         |
| e.  | 03/06/2021 | Rashonda Golden   | Itria Ventures, LLC – New York      | $20,833            |
| f.  | 04/18/2021 | Roxanne Nazir     | Prestamos – Arizona                 | $20,830            |
| g.  | 05/13/2021 | Kiandra Crowe     | Prestamos – Arizona                 | $20,832            |
| h.  | 03/20/2021 | Jeffery Chillis II| Itria Ventures, LLC – New York      | $20,833            |
| i.  | 03/20/2021 | Shaquille Fielder | Itria Ventures, LLC – New York      | $20,833            |
| j.  | 03/23/2021 | Alfred Hayes IV   | Capital Plus – Texas                | $20,832            |
| k.  | 04/05/2021 | Luana McNurlin    | Capital Plus – Texas                | $20,832            |
| l.  | 04/13/2021 | Jordan Nichols    | Prestamos – Arizona                 | $20,832            |

Contrary to the provisions of Title 18, United States Code, Section 1349.

**COUNTS TWO - THIRTEEN**

16. Paragraphs 1 through 15 of the Indictment are hereby realleged and incorporated into Counts Two through Thirteen.

## COUNT TWO

17. On or about February 6, 2021, defendant DAISHA SANDERS created an application to apply for a PPP loan under the CARES Act for her business.

18. The application and supporting documents were submitted on February 6, 2021, and stated that the defendant DAISHA SANDERS was a sole proprietor of a business which had an average monthly payroll of $8,333. As part of the application, a 2019 Schedule C for the defendant DAISHA SANDERS was submitted listing gross receipts of $203,186 and profit of $83,751.

19. In fact, the defendant DAISHA SANDERS did not have a business in 2019 with those gross receipts and profit. DAISHA SANDERS' 2019 tax return listed $20,179 in wages and other income of $6,204.

20. On or about the date set forth below, in Blue Springs, Missouri, in the Western District of Missouri, the defendant, DAISHA SANDERS having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| Count | Date | Wire From | To | Amount |
|---|---|---|---|---|
| 2 | 02/11/2021 | Itria Ventures | Navy Federal Credit Union | $20,832.50 |

Contrary to the provisions of Title 18, United States Code, Section 1343.

## COUNT THREE

21. On or about February 7, 2021, defendant DAISHA SANDERS, aided and abetted by defendant JOEL WRIGHT, completed and sent an application and supporting documents to Blue Acorn to apply for a PPP loan under the CARES Act for his business.

22.     The application and supporting documents stated that the defendant JOEL WRIGHT was a sole proprietor of a business that was established on April 12, 2017. The application stated that in 2019 the business had a monthly payroll of $8,333. As part of the application, a 2019 tax return Form Schedule C was submitted listing gross receipts of $144,080 and a net profit of $99,982.

23..    In fact, the defendant JOEL WRIGHT did not have a business in 2019 with those gross receipts and profit. JOEL WRIGHT's 2019 tax return listed $10,139 in wages and no business income or expenses.

24..    On or about the date set forth below, in Kansas City, Missouri, in the Western District of Missouri, the defendant, DAISHA SANDERS, aided and abetted by defendant JOEL WRIGHT, having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| Count | Date | Wire From | To | Amount |
|---|---|---|---|---|
| 3 | 03/09/2021 | Itria | Navy Federal Credit Union | $20,832.50 |

Contrary to the provisions of Title 18, United States Code, Section 1343.

## COUNT FOUR

21.     On or about May 27, 2021, defendant DAISHA SANDERS, aided and abetted by defendant DENISE SANDERS, completed and sent an application and supporting documents to Harvest Small Business to apply for a PPP loan under the CARES Act for DENISE SANDERS' business.

22. The application and supporting documents stated that the defendant DENISE SANDERS was a sole proprietor of a business established January 1, 2015, and that had gross receipts of $144,080. As part of the application, a 2019 Form Schedule C was submitted listing gross receipts of $144,080 and a profit of $99,982.

23. In fact, the defendant DENISE SANDERS did not have a business in 2019 with those gross receipts and profit. DENISE SANDERS' personal 2019 tax return reported $63,532 in wages and no other income.

24. On or about the date set forth below, in Blue Springs, Missouri, in the Western District of Missouri, the defendant, DASHIA SANDERS, aided and abetted by defendant DENISE SANDERS, having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| Count | Date | Wire From | To | Amount |
|---|---|---|---|---|
| 4 | 06/25/2021 | Harvest Small Business | Navy Federal Credit Union | $20,833 |

Contrary to the provisions of Title 18, United States Code, Section 1343.

## COUNT FIVE

25. On or about March 6, 2021, defendant DANISHA SANDERS, aided and abetted by defendant RASHONDA GOLDEN, completed and sent an application and supporting documents to apply for a PPP loan under the CARES Act for GOLDEN's business, Gorgeous girl extensions.

26. The application and supporting documents stated that the defendant RAHONDA GOLDEN was a sole proprietor of a business established March 1, 2011, and that had

average monthly payroll of $10,657. As part of the application, a 2019 Form Schedule C was submitted listing gross receipts of $62,356 and a net income of $50,296.

27. In fact, the defendant RASHONDA GOLDEN did not have a business in 2019 with those gross receipts and profit. RASHONDA GOLDEN's personal 2019 tax return listed Schedule C gross receipts of $17,730 and net profit of $16,240.

28. On or about the date set forth below, in Blue Springs, Missouri, in the Western District of Missouri, the defendant, DAISHA SANDERS, aided and abetted by defendant RASHONDA GOLDEN, having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| Count | Date | Wire From | To | Amount |
|---|---|---|---|---|
| 5 | 03/10/21 | Itria Ventures LLC | Bank of America | $20,833 |

Contrary to the provisions of Title 18, United States Code, Section 1343.

## COUNT SIX

29. On or about April 18, 2021, defendant DAISHA SANDERS, aided and abetted by defendant ROXANNE NAZIR, completed and sent an application and supporting documents to Blue Acorn to apply for a PPP loan under the CARES Act for NAZIR's business.

30. The application and supporting documents stated that the defendant ROXANNE NAZIR was a sole proprietor of a business established August 7, 2017, and that had gross receipts of $144,080 and net income of $99,982. As part of the application, a 2019 Form Schedule C was submitted listing the same amounts.

11

31. In fact, the defendant ROXANNE NAZIR did not have a business in 2019 with those gross receipts and profit. ROXANNE NAZIR's 2019 personal tax return listed $38,198 in wages and no other income.

32. On or about the date set forth below, in Blue Springs, Missouri, in the Western District of Missouri, the defendant, DAISHA SANDERS, aided and abetted by defendant ROXANNE NAZIR , having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| Count | Date | Wire From | To | Amount |
| --- | --- | --- | --- | --- |
| 6 | 05/13/2021 | Prestamos | Bank of America | $20,830 |

Contrary to the provisions of Title 18, United States Code, Section 1343.

## COUNT SEVEN

33. On or about May 12, 2021, defendant DAISHA SANDERS, aided and abetted by defendant KIANDRA CROWE, completed and sent an application and supporting documents to Blueacorn to apply for a PPP loan under the CARES Act for her business.

34. The application and supporting documents stated that the defendant KIANDRA CROWE was a sole proprietor of a business that was established on October 2, 2017. The application stated that in 2019 the business had gross receipts of $144,080 and a net profit of $99,982. As part of the application, a 2019 tax return Form Schedule C was submitted listing gross receipts of $144, 080 and a net profit of $99,982.

12

35.     In fact, the defendant KIANDRA CROWE did not have a business in 2019 with those gross receipts and profit. KIANDRA CROWE's 2019 tax return listed $28,355 in wages and no business income or expenses.

36.     On or about the date set forth below, in Blue Springs, Missouri, in the Western District of Missouri, the defendant, DAISHA SANDERS, aided and abetted by defendant KIANDRA CROWE, having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| Count | Date | Wire From | To | Amount |
|---|---|---|---|---|
| 7 | 06/04/2021 | Prestamos | Navy Federal Credit Union | $20,832 |

Contrary to the provisions of Title 18, United States Code, Section 1343.

## COUNT EIGHT

37.     On or about March 20, 2021, defendant DAISHA SANDERS, aided and abetted by defendant JEFFERY CHILLIS II, completed and sent an application and supporting documents to Itria Ventures to apply for a PPP loan under the CARES Act for his business.

38.     The application and supporting documents stated that the defendant JEFFERY CHILLIS II was a sole proprietor of a business that was established on January 1, 2017. As part of the application, a 2019 tax return with a Form Schedule C was submitted listing gross receipts of $144, 080 and a net profit of $99,982.

39.     In fact, the defendant JEFFERY CHILLIS II did not have a business in 2019 with those gross receipts and profit. JEFFERY CHILLIS II's 2019 tax return listed $5.245 in wages and no business income or expenses.

13

40. On or about the date set forth below, in Kansas City, Missouri, in the Western District of Missouri, the defendant, DAISHA SANDERS, aided and abetted by defendant JEFFERY CHILLIS II, having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| Count | Date | Wire From | To | Amount |
|---|---|---|---|---|
| 8 | 04/08/2021 | Itria Ventures | Bank of America | $20,833 |

Contrary to the provisions of Title 18, United States Code, Section 1343.

## COUNT NINE

41. On or about March 20, 2021, defendant DAISHA SANDERS, aided and abetted by defendant SHAQUILLE FIELDER, completed and sent an application and supporting documents to Itria Ventures to apply for a PPP loan under the CARES Act for his business.

42. The application and supporting documents stated that the defendant SHAQUILLE FIELDER was a sole proprietor of a business that was established on January 5, 2017, and had $177,996 gross income in 2019. As part of the application, a 2019 tax return with a Form Schedule C was submitted listing gross receipts of $144, 080 and a net profit of $99,982.

43. In fact, the defendant SHAQUILLE FIELDER did not have a business in 2019 with those gross receipts and profit. SHAQUILLE FIELDER's 2019 tax return listed $17,243 in wages and no business income or expenses.

44. On or about the date set forth below, in Kansas City, Missouri, in the Western District of Missouri, the defendant, DAISHA SANDERS, aided and abetted by defendant SHAQUILLE FIELDER, having devised and intended to devise a scheme to obtain money by

means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| Count | Date | Wire From | To | Amount |
|---|---|---|---|---|
| 9 | 04/13/2021 | Itria Ventures | Navy Federal Credit Union | $20,833 |

Contrary to the provisions of Title 18, United States Code, Section 1343.

### COUNT TEN

45. On or about March 23, 2021, defendant DAISHA SANDERS, aided and abetted by defendant ALFRED HAYES IV, completed and sent an application and supporting documents to Blueacorn to apply for a PPP loan under the CARES Act for his business.

46. The application and supporting documents stated that the defendant ALFRED HAYES was a sole proprietor of a business that was established on October 3. 2016. The application stated that the business had gross receipts of $144,080 and a net profit of $99,982. As part of the application, a 2019 tax Form Schedule C was submitted listing gross receipts of $144, 080 and a net profit of $99,982.

47. In fact, the defendant ALFRED HAYES IV did not have a business in 2019 with those gross receipts and profit. ALFRED HAYES' 2019 tax return listed $1 in wages and no business income or expenses.

48. On or about the date set forth below, in Kansas City, Missouri, in the Western District of Missouri, the defendant, DAISHA SANDERS, aided and abetted by defendant ALFRED HAYES IV, having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for

the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| Count | Date | Wire From | To | Amount |
|---|---|---|---|---|
| 10 | 04/08/2021 | Capital Plus | Navy Federal Credit Union | $20,832 |

Contrary to the provisions of Title 18, United States Code, Section 1343.

### COUNT ELEVEN

49.     On or about April 4, 2021, defendant DAISHA SANDERS, aided and abetted by defendant LUANA McNURLIN, completed and sent an application and supporting documents to Blueacorn to apply for a PPP loan under the CARES Act for her business.

50.     The application and supporting documents stated that the defendant LUANA McNURLIN was a sole proprietor of a business that was established on November 1, 2016. The application stated that the business had gross receipts of $144,080 and a net profit of $99,982. As part of the application, a 2019 tax Form Schedule C was submitted listing gross receipts of $144, 080 and a net profit of $99,982.

51.     In fact, the defendant LUANA McNURLIN did not have a business in 2019 with those gross receipts and profit. LUANA McNURLIN's 2019 tax return listed $41,258 in gross receipts and a $26,238 profit for "Lulus Hair Boutique".

52.     On or about the date set forth below, in Kansas City, Missouri, in the Western District of Missouri, the defendant, DAISHA SANDERS, aided and abetted by defendant LUANA McNURLIN, having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

16

| Count | Date | Wire From | To | Amount |
|---|---|---|---|---|
| 11 | 07/06/2021 | Capital Plus | Bank of America | $20,832 |

Contrary to the provisions of Title 18, United States Code, Section 1343.

## COUNT TWELVE

53.     On or about April 16, 2021, defendant DAISHA SANDERS, aided and abetted by defendant JORDAN NICHOLS, completed and sent an application and supporting documents to Blueacorn to apply for a PPP loan under the CARES Act for his business.

54.     The application and supporting documents stated that the defendant JORDAN NICHOLS was a sole proprietor of a business that was established on July 5, 2017. The application stated that the business had gross receipts of $144,080 and a net profit of $99,982. As part of the application, a 2019 tax Form Schedule C was submitted listing gross receipts of $144,080 and a net profit of $99,982.

55.     In fact, the defendant JORDAN NICHOLS did not have a business in 2019 with those gross receipts and profit. JORDAN NICHOLS' 2019 tax return listed $ 17,173 in wages and no business income or expenses.

56.     On or about the date set forth below, in Kansas City, Missouri, in the Western District of Missouri, the defendant, DAISHA SANDERS, aided and abetted by defendant JORDAN NICHOLS, having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

17

| Count | Date | Wire From | To | Amount |
|---|---|---|---|---|
| 12 | 05/11/2021 | Prestamos | Community America Credit Union | $20,832 |

Contrary to the provisions of Title 18, United States Code, Section 1343.

## COUNT THIRTEEN

57. Paragraphs 1 through 56 are hereby realleged, as if fully set forth herein.

58. On or about the dates listed below, in the Western District of Missouri, and elsewhere, the defendant DAISHA SANDERS, did knowingly engage and attempt to engage in the following monetary transactions by, through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, the proceeds of the wire fraud scheme, in violation of Title 18, United States Code, Section 1343, the monetary transaction constituting a separate count of this indictment:

| Count | Date | Monetary Transaction from Navy Federal Credit Union account number XXX3772 |
|---|---|---|
| 13 | 02/11/2021 | $20,832 transfer to Navy Federal Credit Union account number XXX 3207 |

Contrary to the provisions of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION

59. The statements and allegations contained in counts One through Twelve of this Indictment are realleged and incorporated by reference for purposes of alleging forfeiture to the United States, pursuant to provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461.

60. As a result of the offenses alleged in counts One through Twelve of the Indictment, defendant DAISHA SANDERS, shall forfeit all property, real and personal, constituting, or derived from, proceeds traceable to the offense, directly or indirectly, as a result of the violations

18

of law set out in Counts One through Twelve of this Indictment, including, but not limited to, the following property: a money judgment in the amount of at least $70,832.50.

### Substitute Assets

61. If any of the property described in the above paragraph, as a result of any act or omission of the defendant,

    (A)    cannot be located upon the exercise of due diligence;

    (B)    has been transferred to, sold to, or deposited with a third person;

    (C)    has been placed beyond the jurisdiction of the Court;

    (D)    has been substantially diminished in value; and/or

    (E)    has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), which is incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

A TRUE BILL.

2/6/2024
DATE

*/s/ Kimberley Deardorff*
FOREPERSON OF THE GRAND JURY

*/s/ Paul S. Becker*
Paul S. Becker
Assistant United States Attorney
Western District of Missouri